The STATE of Texas

v.

Terence JOHNSON, Appellee

NO. PD–0228–14

Court of Criminal Appeals of Texas.

Delivered: October 7, 2015

Rehearing Denied December 9, 2015.

Joshua Thomas Liles, Palestine, for Appellee.

Amber N. Bewley, Assistant County Attorney, Crockett, Lisa C. McMinn, State's Attorney, Austin, for the State.

Keller, P.J., delivered the opinion of the Court in which Johnson, Keasler, Hervey, Alcala, and Richardson, JJ., joined.

Twenty-six years ago, the United States Supreme Court held that the prosecution of Gregory Lee Johnson under the Texas flag-desecration statute for burning an American flag violated the First Amendment.[1] Texas has since revised and renamed the statute, which now provides in part:

A person commits an offense if the person intentionally or knowingly damages, defaces, mutilates, or burns the flag of the United States or the State of Texas.[2]

We hold that the statute is invalid on its face because it is unconstitutionally overbroad in violation of the First Amendment.

## I. BACKGROUND

### A. The Incident

Video-camera surveillance showed two men and one woman walking on a covered sidewalk next to a building. One man jumped towards a hanging United States flag. Then the second man—appellee—reached and jumped for the flag and caused the flag and its staff to come off its post into his hand. Appellee then threw the flag and its staff into the street. At almost the same time that appellee threw the flag into the street, the other man knocked over flower pots along the sidewalk. Upon approaching the surveillance camera, appellee made various hand gestures and walked out of view.

In a recorded interview that occurred later, appellee explained that he threw the flag because he was "mad." He claimed that he was upset because of racial remarks made about his mother by a local merchant.

### B. Trial Proceedings

As a result of this incident, appellee was charged by information with violating the Texas flag-destruction statute, Texas Penal Code § 42.11. The information alleged that, on or about April 29, 2012, appellee did "[i]ntentionally or knowingly damage, deface, or mutilate a flag of the United States by throwing the flag onto the ground/roadway of Highway 19." The information further alleged that this act was not done in conformity with statutes relating to the proper disposal of damaged flags.

---

1. *Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989).

2. TEX. PENAL CODE § 42.11(a).

Appellee filed a motion to dismiss the information. At the hearing on the motion to dismiss, the parties presented argument on the constitutionality of the flag-destruction statute, and the State introduced the surveillance video and the recording of appellee's interview.

The trial judge ultimately granted the motion to dismiss. In her order, the trial judge observed that appellee could have been charged with criminal mischief under Texas Penal Code § 28.03, but, because his actions involved the United States flag, officers charged him under § 42.11. Citing *Texas v. Johnson* [3] and *United States v. Eichman*, [4] the trial judge concluded, "[S]tatutes which criminalize behavior because it specifically prohibits acts against the flag of the United States have consistently been found to be unconstitutional due to the restriction on the Constitutional rights to free speech and expression." Although Texas amended its statute after the United States Supreme Court handed down *Texas v. Johnson*, the trial judge concluded that the current statute contains language similar to the federal statute in *Eichman*, in which the Supreme Court found a First Amendment violation. The trial judge also rejected the State's argument that the defendant's actions were not speech. "If an action such as burning the flag is protected speech," the trial judge explained, "the action of throwing a flag to the ground can also be protect[ed] speech. Non-verbal action is expressive, [and] the government may not prohibit expression simply because it disagrees with the message or the way it is expressed." While

the trial judge found the mistreatment of the United States Flag to be "personally appalling," she concluded that she was "bound to follow the rulings of higher courts."

## C. Appeal

The State appealed. It contended that the statute was constitutional both on its face and as applied to appellee. With respect to appellee's facial challenge, the State contended that appellee had the burden to establish the statute's unconstitutionality and failed to meet that burden. The State contended that appellee had "not presented any evidence, cases, or arguments establishing [the statute's] unconstitutionality, with the exception of cases that never reached the issue of whether the statute in question was unconstitutional on its face." With respect to appellee's as-applied challenge, the State contended that appellee's conduct was not expressive because anyone observing his actions would believe merely that he was vandalizing the hardware store that displayed the flag and because nothing suggested that appellee was communicating any message at all. Part of the reason the State believed appellee's conduct was not expressive was that he told the police that he was angry at a merchant from a different store from the one whose flag he vandalized.

The court of appeals rejected appellee's claim that the flag-destruction statute was unconstitutional as applied. It concluded that appellee's conduct was not sufficiently imbued with elements of communication so as to implicate the First Amendment. [5] But the court of appeals found that § 42.11

---

**3.** See *supra* n.1.

**4.** 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990).

**5.** *State v. Johnson*, 425 S.W.3d 542, 549 (Tex. App.—Tyler 2014). Judge Yeary's dissent says that the "statute most certainly was ap-

plied constitutionally under the circumstances presented here." For reasons discussed later, we do not think that conclusion is self-evident. But appellee did not file a cross-petition complaining about the court of appeals's disposition of his as-applied challenge, so we have no occasion to resolve that claim.

was unconstitutional on its face because it was overbroad in violation of the First Amendment.[6] In arriving at its holding, the court researched cases in Texas and other jurisdictions that were handed down after *Texas v. Johnson* and *United States v. Eichman*, and the court "found no case in which an individual was prosecuted under a flag desecration statute that was determined to be both constitutional on its face and as applied."[7] The court of appeals acknowledged that the lack of authority relating to the prosecution of individuals for flag desecration arguably shows a pattern of non-enforcement, but the court concluded that the statute was "not sufficiently narrow to prevent a chilling effect on the exercise of First Amendment freedoms" and that the court was "not permitted to uphold an unconstitutional

6. *Id.* at 550–54.

7. *Id.* at 551–52.

8. *Id.* at 553.

9. U.S. CONST. amend. I ("Congress shall make no law ... abridging the freedom of speech.").

10. *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 638–39, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).

11. *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 & n.6, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008); *State v. Rosseau*, 396 S.W.3d 550, 557–58 (Tex. Crim. App.2013). *See also United States v. Stevens*, 559 U.S. 460, 472–73, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010).

12. *County Court of Ulster, N.Y. v. Allen*, 442 U.S. 140, 155, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). This general rule of standing is not the same as the jurisdictional "injury-in-fact" standing requirement of Article III of the United States Constitution. The injury-in-fact requirement entails a showing that a party has a personal stake in the outcome of the controversy by requiring that the party's interest be "concrete and particularized" and "actual or im-

statute, even if there are promises to use it responsibly."[8]

## II. ANALYSIS

### A. The Overbreadth Doctrine

■■■ The First Amendment protects, among other things, the freedom of speech.[9] The First Amendment right to freedom of speech applies to the states by virtue of the Fourteenth Amendment.[10]

■■■ With respect to constitutional provisions other than the First Amendment, a facial challenge to the constitutionality of a statute can succeed only when it is shown that the statute is unconstitutional in all of its applications.[11] And usually, a defendant does not have standing to challenge a statute on the ground that it may be unconstitutionally applied to the conduct of others.[12] But under the First

minent" rather than conjectural or hypothetical. *Susan B. Anthony List v. Driehaus*, —— U.S. ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014). A prosecution under an allegedly unconstitutional law—like in this case—clearly satisfies that requirement because appellant has been arrested and prosecuted. *Id.* at 2342 (observing that "an actual arrest, prosecution, or other enforcement action" is not required to establish injury in fact so long as the threat of such is sufficiently imminent); *Secretary of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 954–55, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) (threat of prosecution was sufficient to establish injury in fact). The principle that parties may not assert the unconstitutionality of a law as to others is a *prudential* standing requirement. *Munson*, 467 U.S. at 955, 104 S.Ct. 2839 ("In addition to the limitations on standing imposed by Art. III's case-or-controversy requirement, there are prudential considerations that limit the challenges courts are willing to hear" including that the party "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). The jurisdictional injury-in-fact requirement has no exceptions in federal court, but prudential standing requirements have been relaxed "where competing considerations outweigh any prudential rationale against third-party standing" such as in First

Amendment's "overbreadth" doctrine, a law may be declared unconstitutional on its face, even if it may have some legitimate application and even if the parties before the court were not engaged in activity protected by the First Amendment.[13] "Ordinarily, the principal advantage of the overbreadth doctrine for a litigant is that it enables him to benefit from the statute's unlawful application *to someone else.*"[14]

The overbreadth doctrine is "strong medicine" that is used "sparingly and only as a last resort.[15] The overbreadth of a statute must be "substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep."[16] The statute must prohibit a substantial amount of protected expression,[17] and the danger that the statute will be unconstitutionally applied must be realistic[18] and not based on "fanciful hypotheticals."[19] The person challenging the statute must demonstrate from its text and from actual fact "that a substantial number of instances exist in which the Law cannot be applied constitutionally."[20] The Supreme Court "generally do[es] not apply the 'strong medicine' of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law."[21] Moreover, the overbreadth doctrine is concerned with preventing the chilling of protected speech and that concern "attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct."[22] "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct that is necessarily associated with speech (such as picketing or demonstrating)."[23]

Judge Yeary's dissenting opinion suggests that, as a matter of state law, we might be free to refuse to entertain overbreadth claims. We do not agree. The dissent relies upon the United States Supreme Court case of *Virginia v. Hicks*[24] and the Utah Supreme Court case of *Provo City Corp. v. Willden.*[25] But *Hicks* itself recognized that whether the claimed overbreadth is substantial enough to result in facial invalidity involves "not standing, but 'the determination of [a] First Amend-

---

Amendment overbreadth claims. *Id.* at 956–58, 104 S.Ct. 2839.

13. *Stevens,* 559 U.S. at 473, 130 S.Ct. 1577; *Sabri v. United States,* 541 U.S. 600, 609–10, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004).

14. *Board of Trustees v. Fox,* 492 U.S. 469, 483, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989) (emphasis in original).

15. *New York State Club Ass'n v. City of New York,* 487 U.S. 1, 14, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988); *Broadrick,* 413 U.S. at 613, 93 S.Ct. 2908. *See also Ex parte Thompson,* 442 S.W.3d 325, 349 (Tex. Crim. App. 2014).

16. *United States v. Williams,* 553 U.S. 285, 292, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008).

17. *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 244, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); *Thompson,* 442 S.W.3d at 349–50.

18. *Regan v. Time,* 468 U.S. 641, 651 n.8, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984); *Thompson,* 442 S.W.3d at 350.

19. *See Stevens,* 559 U.S. at 485, 130 S.Ct. 1577 (Alito, J., dissenting) (citing *Williams,* 553 U.S. at 301–02).

20. *New York State Club Ass'n,* 487 U.S. at 14, 108 S.Ct. 2225.

21. *Washington State Grange,* 552 U.S. at 449–50 n.6, 128 S.Ct. 1184.

22. *Virginia v. Hicks,* 539 U.S. 113, 124, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).

23. *Id.*

24. 539 U.S. 113, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003).

25. 768 P.2d 455 (Utah 1989).

ment challenge on the merits.' " [26] And in *Secretary of Maryland v. Joseph H. Munson Co.*, the United States Supreme Court made it clear that the overbreadth doctrine is in fact a part of substantive First Amendment law:

> [T]he Secretary urges that Munson should not have standing to challenge the statute as overbroad because it has not demonstrated that the statute's overbreadth is "substantial." The Secretary raises a point of valid concern.... The Secretary's concern, however, is one that is more properly reserved for the determination of Munson's First Amendment challenge on the merits. The requirement that a statute be "substantially overbroad" before it will be struck down on its face is a "standing" question only to the extent that if the plaintiff does not prevail on the merits of its facial challenge and cannot demonstrate that, as applied to it, the statute is unconstitutional, it has no "standing" to allege that, as applied to others, the statute might be unconstitutional.[27]

Moreover, *New York v. Ferber* contains what appears to be an explicit statement that state courts are bound to apply the First Amendment overbreadth doctrine: "A state court is not free to avoid a proper facial attack on federal constitutional grounds.... By the same token, it should not be compelled to entertain an overbreadth attack when not required to do so by the Constitution." [28]

The dissent relies on the following passage in *Hicks* for the proposition that states may adopt their own standing requirements for overbreadth challenges: "Whether Virginia's courts should have *entertained* this overbreadth challenge is entirely a matter of state law." [29] But these comments appear to relate to the issue of whether a state is bound to apply the narrow standing requirements that exist in federal court, or whether a state may instead have less stringent standing requirements. The Supreme Court explained that "the problem" with the Commonwealth's proposal was that the Court was reviewing the decision of a state supreme court and state courts are not bound "by the limitations" of a case or controversy or other federal rules of justiciability even when they address issues of federal law.[30] The cited comments, therefore, seem to be a recognition of the unexceptional proposition that states can provide defendants more protection than federal law provides.[31]

The dissent also relies on a passage from *Willden* [32] that appears, on its face, to support the dissent's position. But in that

---

**26.** 539 U.S. at 120, 123 S.Ct. 2191 (quoting *Munson*, bracketed material in *Hicks* ).

**27.** 467 U.S. at 958–59, 104 S.Ct. 2839 (citations omitted). *See also Sabri*, 541 U.S. at 610, 124 S.Ct. 1941 (citing "Monaghan, Overbreadth, 1981 S.Ct. Rev. 1, 24 (observing that overbreadth is a function of substantive First Amendment law)").

**28.** 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (citing *Bigelow v. Virginia*, 421 U.S. 809, 817, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975)).

**29.** 539 U.S. at 120, 123 S.Ct. 2191 (emphasis in original).

**30.** *Id.*

**31.** *See Florida v. Powell*, 559 U.S. 50, 59, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010).

**32.** 768 P.2d at 455–56 ("[T]he federal rules on standing ... are not binding on state courts, and the article III constitutional restrictions and federalistic prudential considerations that have guided the evolution of federal court standing law are not necessarily relevant to the development of the standing rules that apply to Utah's state courts.")

case, the Utah Supreme Court also seems to suggest that a state's leeway with respect to standing involved whether the state could have less stringent standing requirements than those in federal court.[33] Regardless of the ambiguity, the Supreme Court of Utah ultimately applied the overbreadth doctrine and found the statute before it to be facially unconstitutional.[34]

In *Jaynes v. Commonwealth*, the Supreme Court of Virginia addressed and rejected the exact argument made in Judge Yeary's dissent.[35] The Virginia court remarked that, on its face and without context, the cited passage from *Hicks* "appears to support the rule of standing advocated by the Commonwealth. In a nutshell, that rule would be that state courts are not required to apply the same standing requirements to a claimant who raises a First Amendment overbreadth challenge to a state statute in a state court as would be accorded a claimant in a federal court considering a similar First Amendment overbreadth claim."[36] "However," the court responded, "when viewed in the context of the standing issue actually presented in [*Hicks*], and the long-standing Fourteenth Amendment jurisprudence by which First Amendment rights are made applicable in state court proceedings, we disagree with the Commonwealth's arguments."[37] Virginia's high court noted this colloquy, which took place in the *Hicks* case during oral argument before the United States Supreme Court:

QUESTION: The issue is whether—whether [Virginia] adopted a broader interpretation under State law than Federal law would require.

[ANSWER]: That is correct. A—a State may well be able to adopt a broader interpretation of standing than this Court requires, *but it cannot adopt a narrower interpretation. It cannot disregard this Court's direction that you give overbreadth standing according to the Federal constitutional standards.*

. . .

QUESTION: And if they were correct about what our standing rules are, they would have to follow those standing rules, wouldn't they? They could not apply a narrower . . . basis for standing, could they?

[ANSWER]: That is absolutely correct, Your Honor. *The State supreme court has no discretion to disregard this Court's application of the First Amendment through its overbreadth doctrine.*[38]

The Supreme Court of Virginia further observed that the overbreadth doctrine is a matter of substantive First Amendment law, and as such, it is "a constitutional exception to state and federal rules of standing that would otherwise limit a party to an as applied challenge to a statute."[39] That court also discussed the facts and procedural posture of *Hicks*, and it concluded that it was clear that in *Hicks* the Supreme Court addressed the issue of First Amendment standing "only in the

33. *See id.* at 456–57 (remarking on the "rather narrow standing doctrines developed by the federal courts" and quoting the Supreme Court's recognition in *New York State Club Ass'n*, 487 U.S. at 8 n.2, 108 S.Ct. 2225, that state courts may "issue advisory opinions or . . . determine matters that would not satisfy the more stringent requirement in the federal courts that an actual 'case' or 'controversy' be presented for resolution").

34. *Willden*, 768 P.2d at 455, 458–59.

35. 276 Va. 443, 454, 666 S.E.2d 303, 308 (2008).

36. *Id.* at 455, 666 S.E.2d at 309.

37. *Id.*

38. *Id.* at 456–57, 666 S.E.2d at 310 (quoting Oral Arg. Tr., *Virginia v. Hicks*, No. 02–371, at 5 (Apr. 30, 2003)) (bracketed material and emphasis in *Jaynes*).

39. *Id.* at 458, 666 S.E.2d at 310–11.

context by which that issue was placed before the Court: whether a state's *expansion* of First Amendment standing was subject to review by federal courts." [40] Analyzing the passage in *Hicks* where the Supreme Court stated "[w]hether Virginia's courts should have entertained this overbreadth challenge is entirely a matter of state law," the *Jaynes* court found that "the term 'this' plainly limits the standing issue to what was before the Court in that case: an expansion, not a restriction, of state court standing." [41] We agree.

Moreover, it is difficult to understand how the overbreadth doctrine could ever be applied *by any court* to invalidate a state law in its entirety if the doctrine is not itself a federal constitutional doctrine that the state courts have to follow. [42] This status of overbreadth as a substantive constitutional doctrine is similar in that respect to Fourth Amendment expectation-of-privacy issues, which can be characterized as involving "standing," but are more accurately viewed as part of substantive

Fourth Amendment law. [43] No one would claim, for example, that a state court can decline to entertain the Fourth Amendment claims of an overnight guest on the ground that overnight guests simply do not have standing in state court under state law. [44]

Judge Yeary's dissent attempts to draw a distinction between the substantive rule of overbreadth and a procedural rule of overbreadth that accords liberalized standing. He claims that he would not change the substantive rule but would merely restrict which litigants could successfully bring a First Amendment overbreadth claim in state court. But we are not confronted with the question of whether a claim confers standing sufficient to allow the individual to *appear* in court. This is not a civil lawsuit filed by a person seeking to invoke a court's jurisdiction on a First Amendment claim. [45] This case—a criminal prosecution—is the *State's* action. The State has already invoked the jurisdiction of the courts, with the flag-destruction

**40.** *Id.* at 457, 666 S.E.2d at 310 (emphasis in *Jaynes* ).

**41.** *Id.*

**42.** *See Dickerson v. United States*, 530 U.S. 428, 438, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (holding that "first and foremost of the factors" supporting the conclusion that *"Miranda* is a constitutional decision" is that the case applied the rule to "prosecutions arising in state courts"); *NAACP v. Button*, 371 U.S. 415, 432–33, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (recognizing the application of overbreadth doctrine to state laws and explaining that, "[b]ecause First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity").

**43.** *See Rakas v. Illinois*, 439 U.S. 128, 139–40, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (citations omitted) (reaffirming general standing principles but stating that "this Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and we think that definition of those rights is

more properly placed within the purview of substantive Fourth Amendment law than within that of standing") (citations omitted); *State v. Klima*, 934 S.W.2d 109, 110 (Tex. Crim. App. 1996) (recognizing that "the application of Fourth Amendment rights are personal in nature and are invariably intertwined with the concept of standing").

**44.** *See Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). *See also Jaynes*, 276 Va. at 458, 666 S.E.2d at 311 (The Commonwealth's view "is an untenable position because the right to assert the protection of the First Amendment (by overbreadth or otherwise) can no more be restricted by a state rule of standing than the exclusionary rule applied to impermissible searches and seizures could be limited by state evidence law.").

**45.** Nor is the present case even a habeas action, which might at least arguably be said to affirmatively invoke a court's jurisdiction, although it might also be characterized as a vehicle for challenging the State's criminal action, especially when invoked at the pretrial stage. *See Ex parte Rieck*, 144 S.W.3d 510,

statute being the basis for that invocation. As a result, the trial court had authority to decide the case, and authority to review that decision on appeal was conferred by Chapter 44 of the Code of Criminal Procedure.[46] Appellee has simply defended against the State's action by substantively challenging the facial constitutionality of the flag-destruction statute. The trial court agreed and dismissed the information, and it is the State that now seeks the intervention of this Court to overturn the trial court's substantive legal decision. If accepting the overbreadth doctrine as a matter of substantive federal constitutional law means anything, it means, at the least, that a criminal defendant can defend himself in a criminal prosecution by challenging the constitutionality of the statute defining the crime with which he is charged. The dissent says that this violates the Separation of Powers clause of the Texas Constitution,[47] but "[t]he power to determine the validity of an Act of the legislature rests with the Courts."[48]

The dissent also contends that allowing an overbreadth claim by a person who cannot show that the statute is unconstitutional as to him invites us to assume the power to issue advisory opinions and that we are without power to do that. The United States Supreme Court, which recognizes overbreadth claims, is also—under Article III of the United States Constitution—without power to render advisory opinions.[49] By holding that overbreadth is an exception to a *prudential* rule of standing, rather than to *jurisdictional* standing under Article III,[50] the Supreme Court has effectively held that the overbreadth doctrine does not give rise to advisory opinions.[51] Even if we could depart from Supreme Court precedent in deciding whether to recognize overbreadth claims,

---

515 (Tex. Crim. App. 2004) (discussing differing ways of characterizing the nature of habeas proceedings).

**46.** *See* Tex.Code Crim. Proc. arts. 44.01, 44.02. The Supreme Court has recognized that the posture of the case before the court—how the action came before it and which party is complaining—can affect the existence of standing. *See Hicks,* 539 U.S. at 120–21, 123 S.Ct. 2191 ("Because it is the Commonwealth of Virginia, not Hicks, that has invoked the authority of the federal courts by petitioning for a writ of certiorari, our jurisdiction to review the First Amendment merits question is clear.... The Commonwealth has suffered, as a consequence of the Virginia Supreme Court's 'final judgment altering tangible legal rights,' ... an actual injury in fact—inability to prosecute Hicks for trespass—that is sufficiently 'distinct and palpable' to confer standing under Article III.... We accordingly proceed to that merits inquiry, leaving for another day the question whether our ordinary rule that a litigant may not rest a claim to relief on the legal rights or interests of third parties ... would exclude a case such as this from *initiation* in federal court.") (emphasis added).

**47.** *See* Tex. Const. art. II, § 1.

**48.** *Ex parte Halsted,* 147 Tex.Crim. 453, 457, 182 S.W.2d 479, 482 (1944).

**49.** *See Massachusetts v. Environmental Protection Agency,* 549 U.S. 497, 516, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) (No justiciable controversy exists under Article III of the United States Constitution when the parties ask for an advisory opinion.).

**50.** *See supra* n. 12.

**51.** *See also Federal Election Commission v. Akins,* 524 U.S. 11, 24, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (indicating the injury-in-fact requirement of Article III prevents advisory opinions); *Savage v. Gee,* 665 F.3d 732, 740 (6th Cir. 2012) (holding that overbreadth claimant must still show that enforcement of the challenged statute against him is actual or imminent and quoting *Prime Media v. City of Brentwood,* 485 F.3d 343, 350 (6th Cir. 2007): "Because overbreadth creates an exception only to the prudential standing inquiry, the Supreme Court has made clear that the injury in fact requirement still applies to overbreadth claims under the First Amendment.").

we do not see any reason to construe "advisory opinions" to mean something different under state law than it does in the Supreme Court's jurisprudence. There is nothing advisory or hypothetical about the consequence of a criminal defendant prevailing on an overbreadth challenge to the statute that defines the charged offense—the case against him is dismissed.

### B. The State's Arguments

▌ The State contends that appellee has failed to meet his burden to show that the flag-destruction statute is substantially overbroad by its text and has a substantial number of unconstitutional applications in actual fact. With respect to the text, the State contends that the statute is a legitimate content-neutral law because it does not expressly restrict speech and because it punishes any kind of damage or destruction to a United States or Texas flag, regardless of the actor's motive. The State further contends that the amount of protected speech covered by § 42.11 is "minimal when compared to the non-expressive conduct lawfully prohibited" and that any risk of a chilling effect is "dwarfed by the number of lawful applications" of the statute.[52]

With respect to whether the statute has a substantial number of unconstitutional applications in actual fact, the State contends that appellee has failed to "provide examples of actual people who have been deterred from engaging in protected speech or conduct." The State further contends that the court of appeals conceded that the absence of evidence of prosecution under this statute arguably shows a pattern of non-enforcement.[53] The State argues that the statute produces no chilling effect because "the average citizen generally understands that burning a flag as part of expressive speech or conduct is protected by the United States Constitution."[54]

The State also contends that appellee's conduct was not protected by the First Amendment because it was not expressive:

Appellee's conduct instead constituted an act of criminal mischief with no intent to convey any particularized message. Indeed, according to appellee, he did not even expect the flag to come off its staff and into his hand when he jumped and reached for it. Appellee attempted to explain his conduct by claiming he was mad [at] a local merchant. However, in no way did his actions relay that he was angry with a local merchant. In fact, the flag that he threw onto the highway was in front of a different store than the one appellee claimed to be angry with. Further, there was no element of speech in his conduct. The very way appellee committed his crime was random in nature.[55]

During oral argument, the State suggested that the flag-destruction statute was "really just criminal mischief in relation to the flag." The State argued that a punishment provision with respect to conduct directed against the flag—similar to current provisions that enhance punishment for damage to churches and public monuments—could have been included in the criminal-mischief statute.[56] If the flag-

---

52. At oral argument, the State claimed that "almost all" of the conduct the statute covers is outside the First Amendment's protection.

53. See *Johnson*, 425 S.W.3d at 553.

54. State's brief quoting *id.* at 552 (quoting *Roe v. Milligan*, 479 F.Supp.2d 995, 1007 (S.D. Iowa 2007)).

55. Citations omitted, some capitalization changed.

56. *See* Tex. Penal Code § 28.03(f) (state-jail felony punishment if criminal mischief involves "place of worship or human burial, a public monument, or a community center that provides medical, social, or educational programs").

destruction statute sweeps too broadly by punishing someone who damages his own flag, the State further argued, the statute could be narrowly construed to apply only to situations in which the conduct would actually constitute criminal mischief, i.e. damage to someone else's property.[57]

## C. The Statute

### 1. The Text

■ "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers."[58] The Texas flag-destruction statute provides:

(a) A person commits an offense if the person intentionally or knowingly damages, defaces, mutilates, or burns the flag of the United States or the State of Texas.

(b) In this section, "flag" means an emblem, banner, or other standard or a copy of an emblem, standard, or banner that is an official or commonly recognized depiction of the flag of the United States or of this state and is capable of being flown from a staff of any character or size. The term does not include a representation of a flag on a written or printed document, a periodical, station-ery, a painting or photograph, or an article of clothing or jewelry.

(c) It is an exception to the application of this section that the act that would otherwise constitute an offense is done in conformity with statutes of the United States or of this state relating to the proper disposal of damaged flags.[59]

Unlike its predecessor,[60] the current statute narrowly defines what is meant by a "flag," and it excludes certain depictions of a flag from its reach. For example, the current statute avoids past controversies regarding the representation of a flag on clothing by explicitly providing that such does not count as a flag.[61] The current statute also differs from its predecessor in that it does not require that the actor be aware of the likely impact of his conduct on others.[62]

The current Texas statute also circumscribes the type of conduct toward a flag that is proscribed. The statute prohibits only physical mistreatment that alters or damages a flag. The statute does not apply to words spoken that are critical of the United States or Texas flag,[63] nor does the statute apply to physical acts that do not alter or damage a flag.[64]

---

**57.** See id. § 28.03.

**58.** Williams, 553 U.S. at 293, 128 S.Ct. 1830.

**59.** TEX. PENAL CODE § 42.11(a)-(c). The statute also provides that the offense is a Class A misdemeanor. Id. § 42.11(d).

**60.** See TEX. PENAL CODE § 42.09(a)(3) (West 1988) ("A person commits an offense if he intentionally or knowingly desecrates … a state or national flag.")

**61.** See Smith v. Goguen, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) (United States flag sewn to the seat of defendant's trousers); Delorme v. State, 488 S.W.2d 808 (Tex. Crim. App. 1973) (same).

**62.** See TEX. PENAL CODE § 42.09(b) (West 1988) ("For purposes of this section, 'desecrate' means deface, damage, or otherwise physically mistreat in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action.") (emphasis added).

**63.** See Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969) (holding unconstitutional, as applied, a statute that punished words that cast contempt on the flag of the United States).

**64.** See People v. Meyers, 23 Ill.App.3d 1044, 1045, 321 N.E.2d 142, 143 (5th Dist. 1974) (defendant seen lying on American flag in a public park).

## 2. *Narrowing Construction?*

 The federal constitution affords the states broad authority to construe a statute narrowly to avoid a constitutional violation.[65] At the outset, we will assume that the flag-destruction statute applies only to acts that physically damage a flag.[66]

The State argues that the statute may be construed to apply only to conduct that would otherwise constitute criminal mischief, that is, conduct that damages *someone else's* flag (without consent).[67] We decline to impose such a narrowing construction because nothing in the language of the statute supports it. On the contrary, the text of the statute is unambiguously broad in this respect, applying to the conduct of intentionally or knowingly damaging *any* United States or Texas flag, regardless of who owns the flag and whether that owner has consented to the conduct.

 Although a Texas court has a duty to employ, if possible, a reasonable narrowing construction to avoid a constitu-

tional violation, such a construction should be employed only if the statute is readily susceptible to one.[68] "We may not rewrite a statute that is not readily subject to a narrowing construction because such a rewriting constitutes a serious invasion of the legislative domain and would sharply diminish the legislature's incentive to draft a narrowly tailored statute in the first place."[69] A law is not readily subject to a narrowing construction if its meaning is unambiguous.[70] We should be wary of reading into a statute a narrow meaning not supported by its language because such a construction may later be rejected as untenable.[71] Moreover, when the statute is unambiguous, the public at large will not necessarily be on notice that the law means something other than exactly what it says. Instead, we should act in accordance with our usual rules of statutory construction and construe a statute in accordance with unambiguous language absent a finding of absurd results.[72] Consequently, we construe the flag-destruction statute in accordance with the text's unambiguously broad command against intentionally or knowingly damaging any United States or Texas flag.[73]

---

**65.** *Osborne v. Ohio,* 495 U.S. 103, 115 n.12, 119–21, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990); *Thompson,* 442 S.W.3d at 339.

**66.** Although the current statute makes it an offense to, among other things, "deface" a flag, we will assume that the term "deface" can be narrowly construed to not apply to temporary attachments to a flag. *See Spence v. Washington,* 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974) (involving a peace symbol made of removable black tape attached to a United States flag).

**67.** *See* Tex. Penal Code § 28.03(a).

**68.** *Thompson,* 442 S.W.3d at 339; *Long v. State,* 931 S.W.2d 285, 295 (Tex. Crim. App. 1996). *See also Stevens,* 559 U.S. at 481, 130 S.Ct. 1577.

**69.** *Thompson,* 442 S.W.3d at 339. *See also Long,* 931 S.W.2d at 295; *Stevens,* 559 U.S. at 481, 130 S.Ct. 1577.

**70.** *Thompson,* 442 S.W.3d at 339; *Olvera v. State,* 806 S.W.2d 546, 553 (Tex. Crim. App. 1991).

**71.** *See Wilson v. State,* 448 S.W.3d 418 (Tex. Crim. App. 2014) (disavowing statement in *Scott,* made in context of First Amendment challenge, that statutory term "repeated" could be narrowly construed to apply only to activity occurring in close enough proximity to properly be termed a single episode).

**72.** *Thompson,* 442 S.W.3d at 339–40. *See also Boykin v. State,* 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

**73.** *See also Snider v. City of Cape Girardeau,* 752 F.3d 1149, 1158–59 (8th Cir. 2014) (declining to limit Missouri flag-desecration statute to non-expressive conduct given the absence of language to suggest such a limitation); *State v. Janssen,* 213 Wis.2d 471, 480–82, 570 N.W.2d 746, 751 (Ct. App. 1997),

### D. Sweep of the Statute under its Text

#### 1. *Unconstitutional Applications*

The Supreme Court has recognized that the conduct of intentionally or knowingly damaging a United States flag is not inherently expressive.[74] As a result, a statute that proscribes such conduct will at least theoretically apply to some circumstances that do not implicate the First Amendment. The question is whether the applications of such a statute that do implicate (and violate) the First Amendment are so substantial that the statute must be held invalid on its face.

It is clear that the Texas flag-destruction statute violates the First Amendment when applied to some circumstances. In *Texas v. Johnson*, the Supreme Court found that the former flag-desecration statute was applied in violation of the First Amendment when the State punished a person who burned a United States flag as part of a protest against the Reagan Administration.[75] The flag-desecration statute made it an offense to "intentionally or knowingly desecrate[ ] . . . a state or national flag," with "desecrate" being defined to mean to "deface, damage, or otherwise physically mistreat in a way that the actor knows will seriously offend one or more persons likely to observe or discover his action."[76] The Court concluded that whether the defendant's treatment of the flag violated Texas law depended on "the likely communicative impact of his expressive conduct."[77] The Court further concluded that such a restriction on expression was content based.[78]

The Court then considered the State's asserted interest in "preserving the flag as a symbol of nationhood and national unity."[79] This interest was found to be insufficient to justify a content-based restriction because "[i]f there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable" and the Court has "not recognized an exception to this principle even where our flag has been involved."[80] The State argued that, even if the flag's symbolic role does not allow the State to prohibit words or some expressive conduct critical of the flag, it does allow the State "to forbid the outright destruction of the flag."[81] The Court rejected this distinction, saying that it "is of no moment where the nonverbal conduct is expressive, as it is here, and where the regulation of that conduct is related to expression, as it is here."[82] The

---

aff'd, 219 Wis.2d 362, 580 N.W.2d 260 (1998) (declining to limit Wisconsin statute to non-expressive conduct in part because the statute's "plain reading prohibits *all* intentional and public acts of defiling, mutilating, and casting contempt on the flag; it does not distinguish non-expressive conduct").

74. *Johnson*, 491 U.S. at 403 n.3, 109 S.Ct. 2533 ("A tired person might, for example, drag a flag through the mud, knowing that this conduct is likely to offend others, and yet have no thought of expressing any idea."), 405 ("We have not automatically concluded, however, that any action taken with respect to our flag is expressive. Instead, in characterizing such action for First Amendment purposes, we have considered the context in which it occurred."); *Thompson*, 442 S.W.3d at 334.

75. 491 U.S. at 399, 418–20, 109 S.Ct. 2533.

76. *See id.* at 400 n.1, 109 S.Ct. 2533 (quoting Tex. Penal Code § 42.09 (1989)).

77. *Id.* at 411, 109 S.Ct. 2533.

78. *Id.* at 412, 109 S.Ct. 2533.

79. *Id.* at 413, 109 S.Ct. 2533.

80. *Id.* at 414, 109 S.Ct. 2533.

81. *Id.* at 416, 109 S.Ct. 2533.

82. *Id.*

State's "focus on the precise nature of" the defendant's expression, "misse[d] the point" of the Court's prior decisions: "their enduring lesson, that the government may not prohibit expression simply because it disagrees with its message, is not dependent on the particular mode in which one chooses to express an idea." [83] "If we were to hold that a State may forbid flag burning wherever it is likely to endanger the flag's symbolic role," the Court continued, "but allow it wherever burning a flag promotes that role" then "[w]e would be permitting a State to 'prescribe what shall be orthodox' " in violation of the First Amendment.[84]

Although the current flag-destruction statute differs somewhat from the flag-desecration statute considered in *Texas v. Johnson*, it is similar to the statute considered in *United States v. Eichman*. In *Eichman*, the federal flag-protection statute made it a crime if a person "knowingly mutilates, defaces, physically defiles, burns, maintains on the floor or ground, or tramples upon any flag of the United States" unless the conduct consists of "the disposal of a flag when it has become worn or soiled." [85] The Government relied heavily on the fact that, unlike the statute in *Texas v. Johnson*, the federal statute did not require the actor to have any intent or knowledge with respect to whether his actions would seriously offend onlookers.[86] The Supreme Court was not persuaded that this fact made any difference:

"Although the Flag Protection Act contains no explicit content-based limitation on the scope of the prohibited conduct, it is nevertheless clear that the Government's asserted interest is related to the suppression of free expression." [87] "The Government's interest in protecting the physical integrity of a privately owned flag," the Court explained, "rests upon a perceived need to preserve the flag's status as a symbol of our Nation and certain national ideals.".[88] Each of the acts that were prohibited by the statute, with the possible exception of "burns," connoted a disrespectful treatment of the flag, and the explicit exception for the disposal of soiled flags protected "certain acts traditionally associated with patriotic respect for the flag." [89] Consequently, the statute was an impermissible content-based restriction of speech when applied to a person who used the mistreatment of a flag as a method of expressing an idea.[90]

Though the flag-destruction statute before us is not limited solely to expressive conduct, *Eichman* teaches that, when this type of statute *does* apply to expressive conduct, it is an impermissible content-based restriction. As in *Eichman*, the present Texas statute contains an exemption for conduct associated with the proper disposal of a flag. So, as in *Eichman*, the present statute distinguishes between disrespectful and respectful conduct that damages a flag.[91] And while the Texas statute does not require that the disre-

83. *Id.*

84. *Id.* at 416–17, 109 S.Ct. 2533.

85. 496 U.S. at 314, 110 S.Ct. 2404.

86. *Id.* at 315, 110 S.Ct. 2404.

87. *Id.* (internal quotation marks omitted).

88. *Id.* at 315–16, 110 S.Ct. 2404.

89. *Id.* at 317, 110 S.Ct. 2404.

90. *Id.* at 317–19, 110 S.Ct. 2404.

91. Judge Yeary's dissenting opinion says that the legislature enacted the flag-destruction statute in its current form after *Texas v. Johnson* in "an attempt to cure potential constitutional problems with that law." But the Supreme Court issued its opinion in *Eichman* after the current statute was enacted, and it is *Eichman*, more than any other case, that guides our decision today.

spectful conduct be expressive, such conduct is very likely to be expressive in a given case because of the symbolism associated with flags. Flags are "[p]regnant with expressive content," and the United States flag "readily signifies this Nation."[92] The statutory language clearly applies to those who damage a flag of the United States or Texas as a means of communicating a message (e.g. of protest against the United States or Texas). The only ascertainable purpose of a law as broadly worded as the present one—which applies even when the actor damages his *own* flag—is to protect the integrity of the United States flag or Texas flag as a symbol.[93]

### 2. *Expressive Applications Predominate*

The State contends that the number of lawful applications of the flag-destruction statute dwarfs its unlawful applications, but, aside from the present case, the State does not attempt to describe the lawful applications to which the statute theoretically applies. We are aware of two types of situations suggested by the caselaw that might involve lawful applications to conduct that is non-expressive, but the nature

of both situations suggests that prosecutions for them will be uncommon, which in turn suggests that the legitimate reach of the statute is narrow.

The first is conduct toward a flag that is hidden or secretive.[94] The more hidden the conduct, arguably the less expressive it is likely to be,[95] but as conduct becomes more hidden, it also becomes less likely to be discovered, and thus less likely to be prosecuted.[96] If the conduct toward a flag is completely hidden, it will likely be only by unusual happenstance that a prosecuting authority will be alerted to the situation.[97]

The second type of situation involving potentially non-expressive conduct involves the person who acts disrespectfully toward a flag with a casual or cavalier attitude but without intending to communicate a message. The hypothetical described by the Supreme Court was that of "a tired person" who might "drag a flag through the mud, knowing that his conduct is likely to offend others, and yet have no thought of expressing any idea."[98] The Court offered this hypothetical merely as a "possibility" that might be prosecuted under the former Texas statute that was analyzed in

**92.** *Johnson*, 491 U.S. at 405, 109 S.Ct. 2533.

**93.** *See Eichman*, 496 U.S. at 315–16, 110 S.Ct. 2404. The natural symbolism of the flags, the discrimination between respectful and disrespectful treatment of the flags, and the fact that the obvious legislative purpose is one that is directed at expression distinguishes the statute at issue here from the disorderly-conduct provisions cited in Judge Yeary's dissenting opinion. *See* above discussion of *Eichman*. As will be seen below, the offense of flag destruction also differs from these offenses because prosecutions for flag destruction have typically been directed at expressive activity.

**94.** *See Carpenter v. State*, 597 So.2d 757, 758 (Ala. Crim. App. 1992) (soiled flag wadded up in coat pocket).

**95.** *But see Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (First Amendment protects viewing obscenity in the privacy of the home).

**96.** *See Wayte v. United States*, 470 U.S. 598, 612–14, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (discussing passive-enforcement policy of prosecuting those who report their refusal to register for selective service or who are reported and recognizing that Government can more easily prosecute those who openly and obviously violate the law).

**97.** *See Carpenter*, 597 So.2d at 758 (soiled flag wadded up in coat pocket discovered after defendant was arrested for littering and desecrating a Post Office).

**98.** *Johnson*, 491 U.S. at 403 n.3, 109 S.Ct. 2533.

*Texas v. Johnson.*[99] We agree with other courts that this scenario is an unlikely one.[100]

Most conduct that falls within the provisions of the statute and that would come to the attention of the authorities would constitute protected expression.[101] The assessment of Wisconsin's high court regarding its own flag-desecration statute seems to apply equally to the statute before us: "Although there may be constitutionally permissible applications[,] . . . the number of instances in which the law could be applied to unprotected behavior is small in comparison to the number of instances in which it may be applied to expression protected by the First Amendment." [102]

### 3. Criminal Mischief Not Relevant

The State argues that the flag-destruction statute essentially penalizes criminal mischief in relation to the flag, but we disagree. Criminal mischief, as defined in Texas, occurs when a person intentionally or knowingly damages, destroys, tampers with, or makes markings on property "without the effective consent of the owner." [103] As we have already explained, the flag-destruction statute applies even when someone damages his *own* flag.[104]

99. *Id.* The Court declined to address the constitutionality of such a prosecution because it could decide the case before it on narrower grounds. *Id.*

100. *Snider*, 752 F.3d at 1158 (calling it an "unlikely hypothetical" and holding the Missouri flag-desecration statute unconstitutionally overbroad); *Commonwealth v. Bricker*, 542 Pa. 234, 246, 666 A.2d 257, 263 (1995) (citing footnote 3 of *Johnson* and stating, "We hold open the possibility that there are narrow categories in which the flag is used in a non-expressive manner and, in this regard, the United States Supreme Court agrees.").

101. Judge Yeary's dissenting opinion contends that this conclusion is not a proper consideration in an overbreadth analysis because the doctrine "as it is currently enforced by the Supreme Court, requires an examination of the *statute* itself, and not merely the potential or hypothetical First Amendment uses" of the conduct proscribed by the statute. But, as the dissent seems to concede, an examination of the statute and of the possible uses of the conduct proscribed by the statute are not mutually exclusive inquiries. As we explained earlier, the overbreadth doctrine contemplates a showing, from the text and from actual fact, "that a substantial number of instances exist in which the Law cannot be applied constitutionally." *New York State Club Ass'n*, 487 U.S. at 14, 108 S.Ct. 2225. Examining the probable First Amendment uses of conduct proscribed by the statute is a necessary step in answering such an inquiry.

102. *State v. Janssen*, 219 Wis.2d 362, 387, 580 N.W.2d 260, 270 (1998). Although the Wis-

consin statute was broader than the current Texas statute, the Supreme Court of Wisconsin found it to be unconstitutionally overbroad even when narrowed to reach only conduct that defiled the flag through purely physical acts. *Id.* at 382, 580 N.W.2d at 268.

103. TEX. PENAL CODE § 28.03(a).

104. It is indisputably true that a person who damages someone else's flag without consent could validly be punished under a general criminal mischief statute such as Penal Code § 28.03. *See Johnson*, 491 U.S. at 412 n.8, 109 S.Ct. 2533 ("[N]othing in our opinion should be taken to suggest that one is free to steal a flag so long as one later uses it to communicate an idea."). Some of the Supreme Court's cases arguably support a conclusion that the State could validly *enhance* punishment for someone who commits criminal mischief on the basis that the property damaged was a United States flag because damage to such property is an especially egregious form of criminal mischief, involving a greater harm to the flag's owner than its monetary value would indicate. *See Virginia v. Black*, 538 U.S. 343, 363, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) ("The First Amendment permits Virginia to outlaw cross burnings done with the intent to intimidate because burning a cross is a particularly virulent form of intimidation. Instead of prohibiting all intimidating messages, Virginia may choose to regulate this subset of intimidating messages in light of cross burning's long and pernicious history as a signal of impending violence."); *Wisconsin v. Mitchell*, 508 U.S. 476, 487–88, 113 S.Ct. 2194, 124 L.Ed.2d 436

Furthermore, when considering the possible legitimate applications of the flag-destruction statute, there are two reasons that we should not count cases that amount to criminal mischief: the flag-destruction statute does not require the State to show that the person's conduct toward a flag was an act of criminal mischief,[105] and nothing prevents the State from prosecuting a person under *both* the flag-destruction and criminal-mischief statutes.[106] The criminal-mischief aspect of an actor's conduct is a red herring in a constitutional analysis of the flag-destruction

(1993) (Statute does not violate First Amendment when it "singles out for enhancement bias-inspired [assaultive] conduct because this conduct is thought to inflict greater individual and societal harm.").

In any event, the Supreme Court has explicitly recognized the government's power to protect publicly owned flags. *Eichman*, 496 U.S. at 316 n.5, 110 S.Ct. 2404 ("Today's decision does not affect the extent to which the Government's interest in protecting publicly owned flags might justify special measures on their behalf."); *Spence*, 418 U.S. at 409, 94 S.Ct. 2727 ("We have no doubt that the State or National Governments constitutionally may forbid anyone from mishandling in any manner a flag that is public property."). It is primarily for this reason that we find Judge Meyers's "mockingbird" analogy unpersuasive. A mockingbird (like a bald eagle) is a wild animal that belongs to the public. It is a finite natural resource, and a government may choose to protect it. *See State v. Bartee*, 894 S.W.2d 34, 41 (Tex. App.—San Antonio 1994, no pet.) (unanimous panel op. by John F. Onion, Jr.) ("History reveals a long recognition of common ownership in game and wild animals and its developing subjectivity to governmental authority."). To the extent that a mockingbird or bald eagle can be analogized to a flag at all, they would be analogous to a *public* flag. A statute that punished the destruction of a depiction of a mockingbird or bald eagle might, however, raise First Amendment concerns.

**105.** *See Johnson*, 491 U.S. at 412 n.8, 109 S.Ct. 2533 ("There was no evidence that Johnson himself stole the flag he burned.... nor did the prosecution or the arguments in support of it depend on the theory that the flag was stolen.... We also emphasize that Johnson was prosecuted *only* for flag desecration—not for trespass, disorderly conduct, or arson.").

**106.** *See Cullen v. State*, 832 S.W.2d 788, 791–92 (Tex. App.—Austin 1992, pet. ref'd) (in prosecution for the poisoning of the historic Treaty Oak in Austin, rejecting claim that the desecration-of-venerated-object and criminal-mischief statutes must be read *in pari materia* to require prosecution only under the former). *Cullen* addressed the predecessor to the current flag-destruction statute, but its reasoning is equally applicable to the present statute. The flag-destruction and criminal-mischief offenses are not the same under the *Blockburger* same-elements test, and other factors do not suggest that the legislature intended the offenses proscribed by those statutes to be treated as the same. *See id.* at 792 ("These two statutes are contained in different legislative acts, address differing situations, require different elements of proof, and serve different objectives. We believe the legislature intended to define two separate offenses with different elements and different levels of punishment. It follows that section 42.09 is not a special subset of the general offense of criminal mischief."); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932) ("[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."); *Ex parte Ervin*, 991 S.W.2d 804, 814 (Tex. Crim. App. 1999) ("The *Blockburger* test is a useful tool for ascertaining legislative intent, but it is not the only tool. Other ... considerations [are] relevant to determining whether the Legislature intended multiple punishments....").

We further note that the predecessor statute at issue in *Cullen* also penalized the desecration of public monuments and places of worship or burial. *See Cullen*, 832 S.W.2d at 792; TEX. PENAL CODE § 42.09 (West 1988). Those portions of the statute were later moved to the criminal mischief statute to enhance the level of the offense. *See* TEX. PENAL CODE § 28.03(f) (current). The legislature has not, however, codified a criminal-mischief enhancement based on destruction of the flag. *See* TEX. PENAL CODE § 28.03, *passim*.

statute: by allowing for a separate prosecution and penalty in addition to that authorized for criminal mischief, the flag-destruction statute enables the State to separately penalize the actor's expression.[107]

However, even if we assumed that the flag-destruction statute could legitimately be applied to conduct that amounted to criminal mischief (whether expressive or not), the statute would still cover a wide swath of expressive conduct that does not amount to criminal mischief. Even under that assumption, then, the unconstitutional applications of the statute would, by its text, be substantial in relation to its plainly legitimate sweep.

## E. Sweep of the Statute in Actual Fact

As for whether the application of the flag-destruction statute to expressive activity is significant in actual fact, we need look only to the numerous prosecutions of flag desecration involving physical alteration or damage to a flag that are documented by judicial decisions.[108] By

107. *See R.A.V. v. City of St. Paul,* 505 U.S. 377, 385, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992) ("The proposition that a particular instance of speech can be proscribable on the basis of one feature (e.g., obscenity) but not on the basis of another (e. g., opposition to the city government) is commonplace and has found application in many contexts. We have long held, for example, that nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses—so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not.").

108. *See Snider,* 752 F.3d at 1154–55 (plaintiff attempted to set fire to flag in his front yard, then shredded it and threw it into the street; officer conceded he violated plaintiff's First Amendment rights); *Janssen,* 219 Wis.2d at 367–68, 580 N.W.2d at 262 (defecating on a flag and leaving it on the steps to a golf course clubhouse); *Eichman,* 496 U.S. at 312, 110 S.Ct. 2404 (setting fire to several United States flags on the steps of the United States Capitol while protesting various aspects of the Government's domestic and foreign policy); *United States v. Cary,* 897 F.2d 917, 919–21 (8th Cir.), *vacated,* 498 U.S. 916, 111 S.Ct. 288, 112 L.Ed.2d 243 (1990) (at protest of the decision of the United States Government to send 3,200 troops to Honduras, an unidentified woman came up to defendant, handed him a flag, and told him to light it, which he did); *United States v. Haggerty,* 731 F.Supp. 415, 416 (W.D. Wash.), *aff'd sub nom., Eichman,* 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990) (flag burned at a political demonstration in front of a post office to protest the Flag Protection Act of 1989); *Johnson,* 491 U.S. at 399, 109 S.Ct. 2533 (burning flag as part of protest against Reagan administration); *Bowles v. Jones,* 758 F.2d 1479 –80 (11th Cir. 1985) (burning flag at Communist rally as a protest against U.S. imperialism); *Monroe v. State Court of Fulton County,* 739 F.2d 568, 570–71 (11th Cir. 1984) (flag burned at protest against U.S. involvement in Iranian affairs); *People v. Sutherland,* 9 Ill.App.3d 824, 826, 292 N.E.2d 746, 747 (1973) (flag burned to protest against the invasion of Cambodia and the death of the four students at Kent State); *State v. Farrell,* 209 N.W.2d 103, 104 (Iowa 1973) (flag burned at protest of the Indo–China War and the presence of R.O.T.C. on the campus); *United States v. Crosson,* 462 F.2d 96, 98 (9th Cir. 1972) (flag burned by war protestors in R.O.T.C. building); *Joyce v. United States,* 454 F.2d 971, 977–80 (D.C. Cir. 1971) (flag torn by person in group of protestors at Inauguration Day Parade); *Deeds v. State,* 474 S.W.2d 718, 719–20 (Tex. Crim. App. 1971) (flag burned at crowded public park in Dallas); *People v. Burton,* 27 N.Y.2d 198, 201, 265 N.E.2d 66, 66, 316 N.Y.S.2d 217 (Ct. App. 1970) (After affixing a flag to a vacant building and setting it on fire, the defendant said, "I am going to burn Johnson, Humphrey and Wallace just as I am going to burn this flag."); *State v. Turner,* 78 Wash.2d 276, 277–78, 283–84, 474 P.2d 91, 93, 96 (1970) (flag burned at gathering by organization having to do with the social and economic rehabilitation of a large economically depressed area of Seattle); *United States v. Ferguson,* 302 F.Supp. 1111, 1112 (N.D. Cal. 1969) (flag burned at rally on the front steps of a United States District Courthouse). *See also State v. Jimenez,* 828 S.W.2d 455 (Tex. App.—El Paso 1992) (not

contrast, prosecutions involving even arguably non-expressive conduct appear from the cases to be uncommon as a historical matter.[109] Even prosecutions that involve expressive activity that also constitutes criminal mischief appear to be a small proportion of the cases.[110] In fact, we are not aware of a single case since *Eichman* that has resulted in a final conviction under a flag destruction statute. Such prosecutions have been terminated in the defendant's favor because the statute violated the constitution in one way or another[111] or, in one case, because the court declined to address the constitutionality of the statute after finding the evidence insufficient to support the conviction.[112]

### F. Pattern of Non–Enforcement

We turn now to the State's contention that the Texas flag-destruction statute will not be unconstitutionally applied in a significant number of instances because there is currently a pattern of non-enforcement. Essentially, the State's argument is that the Supreme Court's opinions in *Texas v. Johnson* and *United States v. Eichman* have deterred and will continue to deter prosecutors from bringing flag-destruction prosecutions that would violate the First Amendment. Concomitantly, the State contends, these cases have caused the average citizen to understand that the United States Constitution protects the right to burn the United States flag to express an idea, so the average citizen will not feel constrained by the statute from engaging in such conduct.[113] It is no doubt true that the Supreme Court's decisions in *Johnson* and *Eichman* have deterred prosecutions for flag desecration[114] and that those decisions have raised awareness among mem-

---

setting out the alleged conduct but ruling Texas flag-destruction statute unconstitutional).

109. *See Commonwealth v. Forrey*, 108 A.3d 895, 897 (Pa. Super. 2015) (troopers discovered large debris trail—which included a United States flag—extending from defendant's truck to a wooded area, flag-desecration charge dismissed pretrial); *Bricker*, 542 Pa. at 237–38, 244, 666 A.2d at 259, 262 (dirty and wrinkled flag being used at entrance to home as artistic decoration, holding statute unconstitutional as applied because artistic expression is protected by the First Amendment); *Carpenter*, 597 So.2d at 758 (soiled flag wadded up in pocket, acquittal on appeal because desecration was not in public); *Meyers*, 23 Ill.App.3d at 1045, 321 N.E.2d at 143 (person lying on flag in public park, acquittal on appeal because he did not "trample" the flag); *Cincinnati v. Bunch*, 32 Ohio App.2d 161, 161–62, 288 N.E.2d 854, 855 (1971) (defendant "spread the flag out on the ground and placed his personal property on top of it," conviction for defiling the flag upheld). The last two cases would not appear to be prosecutable under the current Texas statute, and it is not entirely clear whether the first three cases could be.

110. *See Janssen*, 219 Wis.2d at 367, 580 N.W.2d at 262 (flag stolen from a golf course); *Haggerty*, 731 F.Supp. at 416 (burned flag belonging to the United Sates Postal Service).

111. *See supra* nn.108–10; *infra* n.119. The State cites *Milligan*, a federal district court opinion, which found no First Amendment violation, but the opinion held that the statute was void for vagueness in violation of the Fourteenth Amendment. 479 F.Supp.2d at 1008–14.

112. *Carpenter*, 597 So.2d at 758.

113. *See Milligan*, 479 F.Supp.2d at 1007 (contending that "[i]t is reasonable to believe that the average citizen generally understands that burning a flag as part of expressive speech or conduct is protected by the United States Constitution" and such general knowledge "would be sufficient to dispel any possible chilling effect").

114. *See Winsness v. Yocom*, 433 F.3d 727, 736 (10th Cir. 2006) ("In this case, Mr. Blaylock has foresworn any intention to bring criminal charges against individuals who alter the flag for expressive purposes. His superior, Mr. Yocom, has gone further, categorically announcing that his office will bring no prosecutions under the statute."); *Lawson v. Hill*, 368

bers of the general public that certain disrespectful conduct toward the United States flag is protected by the United States Constitution. But we are not persuaded that the deterrent effect and popular understanding of Supreme Court decisions are valid factors in determining whether a statute is unconstitutionally overbroad.

The State's argument involves a sort of bootstrapping. In effect, the State is arguing that certain applications of the flag-destruction statute are so obviously unconstitutional that prosecutors will steer clear of them, and because of that, the actual unconstitutional applications of the statute will not be substantial in relation to the statute's legitimate sweep. The State also suggests that there will be no chilling effect from these unconstitutional applications because the public understands that the courts will not enforce them. The State's argument is somewhat like an argument advanced in a capital murder appeal a decade ago. The defense argued that the court should find the evidence to be insufficient to show future dangerousness because the defendant was so obviously dangerous that the prison authorities would place him in lockdown to prevent

him from hurting anyone.[115] Although we found that defendant's argument to be "ingenious," we rejected it because "it would stand the capital punishment scheme on its head, giving relief to the most dangerous offenders."[116] Likewise, the State's argument would seem to stand First Amendment jurisprudence on its head, upholding a statute on the basis that its unconstitutional applications are so glaringly obvious that prosecutors will avoid them and speech will not be chilled by them.

Moreover, the Supreme Court has clearly stated that it will not uphold a statute "merely because the Government promised to use it responsibly."[117] "The First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige.*"[118] And so long as a statute remains on the books, the threat of "irresponsible" use remains, because a prosecutor or police officer may be insufficiently instructed on the issue, because the authorities (wrongly) perceive the conduct to fall outside constitutional protection, or because of other reasons. The caselaw contains post-*Eichman* examples of such occurrences with respect to flag-desecration statutes.[119] By depending on the Supreme Court's "as-applied" jurisprudence

F.3d 955, 956–57 (7th Cir. 2004) ("At some point [the prosecutor] learned about the demonstrations and told both the police chief of Goshen, and the county's sheriff, not to investigate whether the students had violated the flag-desecration statute. We do not know when anyone was last prosecuted under the statute. We know only that [the prosecutor] has never prosecuted anyone under it and is unaware of any prosecutions in other counties.").

115. *Masterson v. State*, 155 S.W.3d 167, 172–74 (Tex. Crim. App. 2005).

116. *Id.* at 174.

117. *Stevens*, 559 U.S. at 481, 130 S.Ct. 1577.

118. *Id.*

119. *See Phelps v. Powers*, 63 F.Supp.3d 943, 945–46, 952–57 (S.D. Iowa 2014) ("According to Petitioners [members of Westboro Baptist Church], Chief Powers told Elizabeth Phelps that the flag desecration statutes would be enforced against the picketers. As a result of Chief Powers's statement, members of the church refrained from putting the flag on the ground or hanging it from their bodies." The court found the Iowa flag-desecration statute to be unconstitutionally overbroad in violation of the First Amendment.); *Snider*, 752 F.3d at 1154 (In 2009, the defendant was arrested for flag desecration for shredding an American flag in his front yard and held in jail for approximately eight hours because both the arresting officer and the prosecutor "were unaware of the United States Supreme Court decisions in *Texas v. Johnson* and *United States v. Eichman.*" Upon being informed of *Johnson* by a local reporter, the prosecutor

to reduce the overbreadth of a statute, the State shifts to a significant degree the determination of constitutional questions from the courts to the prosecutors, the police, and the public. But we should not expect persons in those latter positions to be the primary interpreters of the First Amendment:

Arguably, people are always "on notice" that constitutionally protected conduct is exempt from prosecution, and law enforcement officials could always look to the First Amendment to determine when a law should not be enforced because it would interfere with constitutionally protected activity.... Because First Amendment doctrines are often intricate and/or amorphous, people

should not be charged with notice of First Amendment jurisprudence.... Moreover, an attempt to charge people with notice of First Amendment caselaw would undoubtedly serve to chill free expression.[120]

Further, in explaining why it believes appellee's conduct in this case was not expressive, the State offers rationales that could readily lend themselves to the harassment of persons engaging in protected expression.[121] The State claims that there was "no element of speech" in appellee's conduct because his conduct "was random in nature." But the act of throwing down a flag in anger could easily be protected expression.[122] The State also

dismissed the case.); *Gooding v. Ketcher*, 838 F.Supp.2d 1231, 1234–35 (N.D. Okla. 2012) (In 2009, a United States flag was used by the plaintiff as a prop during a band performance, the plaintiff was arrested and imprisoned for thirteen hours until he posted bond, formal charges were never filed, and the sheriff commented in support of arrest, "I was shocked and disturbed by this that somebody would think they could get by with that.... People in this part of the United States are very proud of the flag and what it stands for and the men and women who have lost their lives to protect that flag. It's not an object to be stomped on or drug across the floor."); *Milligan*, 479 F.Supp.2d at 997 (Two defendants were prosecuted in 2006 for flag desecration or disorderly conduct with respect to the flag for flying flag upside-down in protest. One defendant was found not guilty by a magistrate on the basis that the statute was unconstitutional as applied. The other defendant's case was dismissed one day before trial.); *Janssen*, 219 Wis.2d at 367–68, 580 N.W.2d at 262 (In 1996, the defendant was prosecuted for flag desecration after he defecated on flag belonging to golf course. Trial court dismissed the prosecution, and the appellate courts affirmed.); *Bricker*, 542 Pa. at 237–38, 246–47, 666 A.2d at 258–59, 263 (In 1993, the defendant was prosecuted for flag desecration after a police officer discovered a dirty and wrinkled flag being used in a doorway inside the home. Trial court quashed the charge, and appellate court affirmed.).

120. *Long*, 931 S.W.2d at 295 (criticizing reliance on language in an affirmative defense that made it a defense if the actor engaged in activity "in support of constitutionally ... protected rights" because such language would require citizens and law-enforcement officials "to be First Amendment scholars"). *See also Janssen*, 219 Wis.2d at 382 n.13, 580 N.W.2d at 268 n.13 ("[A] construction which by its very language limits a statute's application to speech and conduct that is not protected by the First Amendment is both impractical and constitutionally suspect.... [I]t simply exchanges overbreadth for vagueness.") (quoting in part from Laurence H. Tribe, AMERICAN CONSTITUTIONAL LAW, § 12–29, at 1031 (2d ed. 1988), internal quotation marks omitted).

121. Although the case is before us on a facial challenge to the statute, "we can look to the prosecution before us as evidence of the real danger posed by the statute." *Thompson*, 442 S.W.3d at 350 (citing *Stevens*, 559 U.S. at 480, 130 S.Ct. 1577).

122. *See Joyce*, 454 F.2d at 980 ("When all this is added to the unexplained tearing which marred, injured, and disfigured the flag, it was reasonable to conclude that Joyce intended thereby publicly to show his disrespect and scorn for the flag and that he esteemed it to be low and worthless. That is the normal inference from an act of intentionally tearing an article. It is the conclusion that reason-

contends that appellee's conduct was non-expressive because he threw down a flag that belonged to a different store than the one he was angry with. That conclusion depends on statements made by appellee to the police after they confronted him about his conduct in relation to the flag. If the expressive nature of a person's conduct depends upon what he later says when confronted by the police about it, then individuals who have engaged in expressive flag-damaging conduct can nevertheless be subject to arrest and detention pending an investigation regarding whether the conduct was in fact protected expression.[123] The State argues that the public clearly understands that the Constitution protects the right to damage a flag as a means of expression, but however clear that public understanding may be, the ruling sought by the State today would cloud that understanding—potentially reintroducing the very chilling effect that the State claims earlier decisions have eliminated.

### III. CONCLUSION

"The case is made difficult not because the principles of its decision are obscure but because the flag involved is our own."[124] We conclude that the Texas flag-destruction statute, by its text and in actual fact, prohibits a substantial amount of activity that is protected by the First Amendment, judged in relation to its legitimate sweep. Consequently, we hold that the Texas flag-destruction statute is facially invalid because it is unconstitutionally overbroad in violation of the First Amendment. We affirm the judgments below.

Alcala, J., filed a concurring opinion.

Meyers, J., filed a dissenting opinion.

Yeary, J., filed a dissenting opinion.

Newell, J., dissents.

### CONCURRING OPINION

Alcala, J., filed a concurring opinion.

I join this Court's majority opinion that holds that the statute criminalizing the damage or destruction of the American flag is unconstitutionally overbroad. I write separately to make three observations that influence my decision in this case.

First, I love the American flag. It waves near the front entrance of my house almost all year long. On special national holidays, my family places multiple smaller flags along the sidewalk. Pinwheels in my yard and the wreath on my door have a design similar to a flag. I just love it. I believe that all the judges of this Court and of every other court in this country feel the same way. So if I love the flag as much as I do, then why do I join this Court's majority opinion that finds a law protective of the flag to be unconstitutional? To me, we best honor the flag by upholding the federal constitutional provisions that disallow any statute seeking to broadly criminalize its damage or destruction. It is precisely because the flag

---

able people reach countless times a day in the activities of ordinary life when they see a person rip something apart, throw part of it to the ground and tear the remainder.").

**123.** The Supreme Court has suggested that its concerns are amplified when First and Fourth Amendments freedoms intersect. *See Maryland v. Macon,* 472 U.S. 463, 468, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) ("The First

Amendment imposes special constraints on searches for and seizures of presumptively protected material and requires that the Fourth Amendment be applied with 'scrupulous exactitude' in such circumstances.").

**124.** *Barnette,* 319 U.S. at 641, 63 S.Ct. 1178 (regulation requiring school children to salute American flag and recite pledge of allegiance violates First and Fourteenth Amendments).

serves as a symbol for everything that is good about the United States—the right to the free exercise of religion, freedom of speech, and the right to peaceably assemble—that the government may not enact a law that is so broad that it stifles freedom of expression by threatening criminal punishment for the flag's damage or destruction.

It is ironic that, in order to honor the constitutional principles underlying the flag, its destruction must be permitted. The fact that a person damages or destroys a flag in a disrespectful way should be viewed as a recognition that our constitutional right to freedom of speech includes allowing that kind of behavior, disgraceful as almost all of us may find it. The more a person loves the flag for its symbolic value, the more he will surely recognize that its damage and destruction must be permitted as a freedom of speech guaranteed by the Constitution.

No branch of government, however well-intentioned or considered its work, is authorized to violate the federal constitutional right to freedom of speech. As a co-equal branch of government, this Court must enforce the federal Constitution as it is written, even when doing so may not be politically expedient. Although I suspect that most people in Texas would prefer that we uphold the flag-preservation statute because they love their flags as much as I do mine, I must honor my duty to preserve, protect, and defend the Constitution of the United States.

Second, this statute is so broad that I suspect that the majority of homeowners in Texas have violated it on numerous occasions and that they could be subject to prosecution by a government official acting under his lawful authority. The statute states, "A person commits an offense if the person intentionally or knowingly damages, defaces, mutilates, or burns the flag of the United States or the State of Tex-

as." TEX. PENAL CODE § 42.11(a). The statute applies to all flags "capable of being flown from a staff of any character or size," and the only exception to the statute is for the "proper disposal of damaged flags" done in "conformity with statutes of the United States or of this state." *Id.* § 42.11(b), (c). Thus, if someone buys a dollar-store flag similar to the ones that line many sidewalks of numerous homes in honor of our country during national holidays, with a staff that is a small stick ten inches high, flying a flag that is six inches in width, the person commits a Class A Misdemeanor under this statute by placing that item in the trash, even if the disposal is merely because the item is dirty from mud. Although I agree with this Court's majority opinion that the statute is overbroad in the sense that it infringes on the First Amendment rights of those people who desire to damage or destroy the flag as a means to protest American values, I make the additional observation here that this statute is also so broad that it can make criminals of vast numbers of homeowners who fly the flag as a form of speech in honor of our country. It should give no one any comfort that it would appear exceedingly unlikely that a government official would incarcerate anyone for throwing away a muddied dollar-store flag that was used to honor our country on a special holiday. Our constitutional right to free speech should not be dependent on the whim of any governmental official who decides that the homeowner honoring our country by displaying the small dollar-store flag should not be prosecuted for throwing away a muddy flag, but that the anti-government demonstrator should be placed in jail for up to a year for having damaged that same flag in a similar way. Our constitutional rights cannot be dependent on the views of a government official who decides which speech he finds meets his approval.

Third, as this Court's majority opinion observes, the Supreme Court's decisions in *Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), and *United States v. Eichman*, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990), have already resolved the vast majority of the issues before us with respect to the constitutional implications of laws regulating the destruction or damage of flags. Furthermore, the Supreme Court has expressly permitted a defendant to "attack" "overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). "[B]ecause of the possible inhibitory effects of overly broad statutes" that affect people's freedom of speech, overbreadth attacks on these statutes are permitted. *Id.* It is suggested that this Court should disregard the Supreme Court's overbreadth doctrine and that this Court should create a procedural hurdle that would require a defendant to show that his rights were personally affected by a statute. I disagree. I conclude that it would be improper and unconstitutional to create a state standard that would make it more difficult for a defendant to prevail on a First Amendment challenge in state court than in federal court. In an analogous context, the Supreme Court has held that a state may not enact a law that would make it more difficult for a defendant to obtain relief under the Eighth Amendment of the federal Constitution by elevating the burden of proof necessary to establish intellectual disability. *Hall v. Florida*, 572 U.S. ——, 134 S.Ct. 1986, 2000–01, 188 L.Ed.2d 1007 (2014). In *Hall*, the Court held that the determination of who was intellectually disabled was so intertwined with the federal constitutional prohibition against the execution of certain intellectually disabled

people that the state of Florida was not permitted to set forth its own definition that would make it more difficult to obtain relief than under the federal standard for proving intellectual disability. *See id.* Similarly, here, this Court cannot limit the scope of the First Amendment by permitting challenges only by those who can show that their own rights of free speech were affected by a particular statute. The Supreme Court's rationale that the possible inhibitory effects of an overly broad statute warrant consideration of attacks even by those whose First Amendment rights are not personally affected is equally applicable whether the attack is in state court or federal court. *Broadrick*, 413 U.S. at 612, 93 S.Ct. 2908. I, therefore, agree with the majority opinion's assessment that the overbreadth doctrine constitutes a substantive component of First Amendment law and that this Court is not free to disregard it.

Because this Court's majority opinion applies Supreme Court precedent to this case to resolve most of the questions before us, and because we are bound to follow that precedent, I join this Court's majority opinion.

## DISSENTING OPINION

Meyers, J., filed a dissenting opinion.

I disagree that the destruction-of-a-flag statute is unconstitutionally overbroad. The statute is actually quite specific: "A person commits an offense if the person intentionally or knowingly damages, defaces, mutilates, or burns the flag of the United States or the State of Texas." TEX. PENAL CODE § 42.11. It serves to keep people from destroying a symbol of our nation and state, which is exactly what Appellee did here. By all accounts, he was not attempting to make any type of statement, so his conduct is not protected under the First Amendment. Although it is the

flag's symbolism that provides it specialized protection under this statute, its use as a symbol of expression is exempted from prosecution and thus the limited enforcement of the statute will not produce a chilling effect on protected conduct. The State could just as easily promulgate a statute prohibiting the killing of a mockingbird, which as the State bird of Texas also has great symbolism, without infringing on the freedom of expression.

Because it is overkill to declare this statute unconstitutional when the real question is merely whether the State had sufficient evidence to convict Appellee of destruction of a flag, I respectfully dissent.

## DISSENTING OPINION

Yeary, J., filed a dissenting opinion.

Today, the Court declares Texas' destruction of a flag statute facially unconstitutional. Six members of this Court undo the considered work of our State's House of Representatives, our Senate, and our Governor.[1] Having determined that the law is drawn in violation of the First Amendment, the Court's opinion means that this penal law may no longer be enforced against anyone, no matter what the circumstances—ever. This is a powerful rebuke to the people's representatives! I do not join it.

To be clear, I do not today contest the opinions of the United States Supreme Court, which have determined that laws similar to the one at issue here are capable of being applied in a manner that is inconsistent with the guarantees of the First Amendment. *See, e.g., Texas v. Johnson*, 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989) (finding that the former version of Texas' destruction of a flag statute was applied unconstitutionally); *United States v. Eichman*, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990) (finding that the Flag Protection Act of 1989 had been applied unconstitutionally). But this Court's opinion does not limit itself to a conclusion that the statute has been *applied* unconstitutionally against Appellee. It can't! The statute most certainly was applied constitutionally under the circumstances presented here.[2]

Instead of assessing whether the statute was applied unconstitutionally in this case, the Court avoids that question and finds that the statute facially conflicts with the First Amendment due to its substantial overbreadth. In reaching that conclusion, the Court goes where no United States Supreme Court opinion has gone before it. Twice before, in *Texas v. Johnson* and again in *United States v. Eichman*, the United States Supreme Court has found statutes regulating the destruction or desecration of flags to have been unconstitutionally applied. *Johnson*, 491 U.S. at 404 n.3, 109 S.Ct. 2533 (explaining that the

---

1. The former version of Penal Code Section 42.11, entitled "Desecration of a Venerated Object," was repealed after the United States Supreme Court found it had been applied unconstitutionally against a protester in *Texas v. Johnson*. 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). In an attempt to cure potential constitutional problems with that law, the Legislature enacted the statute at issue in this case.

2. The majority suggests that whether the statute was applied constitutionally in this case is not self-evident. Majority Opinion at 863 n.5.

But the court of appeals resolved this question. *State v. Johnson*, 425 S.W.3d 542, 549 (Tex. App.—Tyler 2014) (explaining, "we conclude that Appellee's conduct was not 'sufficiently imbued with elements of communication' to implicate the First and Fourteenth Amendments," and "[t]he record before us shows that Appellee engaged in an act of criminal mischief with no intent to convey any particularized message."). As the majority correctly notes, Appellee did not challenge that determination. Consequently, this Court should regard the court of appeals resolution of that issue as conclusive.

Court intentionally chose to resolve this case only "on the basis of his claim that the statute as applied to him violates the First Amendment"); *Eichman*, 496 U.S. at 312, 110 S.Ct. 2404 (concluding that the federal Flag Protection Act "cannot constitutionally be applied to appellees"). But the Supreme Court has never, to my knowledge, found such a statute to be facially unconstitutional. Instead, it has declined to make that kind of an expansive ruling, even explaining at one point, "[w]e have not automatically concluded ... that any action taken with respect to our flag is expressive." *Johnson*, 491 U.S. at 405, 109 S.Ct. 2533.

I am persuaded that, in reaching the conclusion that the Texas destruction of a flag statute is facially unconstitutional, the Court has made two important mistakes. First, I am persuaded that the Court has made a mistake in concluding that it (the Texas Court of Criminal Appeals) has both the power and the constitutional obligation, mandated by no less than the First Amendment itself, to decide that the destruction of a flag statute is facially unconstitutional *in this case*, even though the defendant cannot show the statute was unconstitutionally applied to him and to his own conduct. Second, I am persuaded that the Court has mistakenly concluded that the statute at issue here is substantially overbroad in relation to its otherwise plainly legitimate sweep, when it is not. For these two reasons, as more fully explained in this opinion, I respectfully dissent.

## AUTHORITY TO DECIDE THE CASE

The majority concludes in this case that Texas courts are bound—by no less than the First Amendment itself—to review Appellee's claim that the statute is unconstitutional because it violates the First Amendment, regardless of whether he can show that his own First Amendment rights have been violated. I disagree. I believe Appellee's complaint that the statute under which he was charged violates the First Amendment should have been rejected because he cannot show that his own First Amendment rights have been violated. For reasons grounded in the Texas Constitution and in Texas law, I believe we should find that we and the other courts in our state are not authorized to address challenges to the constitutionality of statutes—even in cases alleging First Amendment overbreadth—brought by claimants who cannot show that the statute operated unconstitutionally in their own cases.

I must address my thoughts on this matter in two parts. First, I will explain why I believe Texas does indeed have the discretion to apply a stricter standard than the standard employed by the federal courts when assessing which litigants have standing to bring an overbreadth claim in our state courts. Second, I will explain why I believe our authority to address overbreadth claims is more limited than the authority of the federal courts.

### A. State Discretion to Restrict Standing for Overbreadth Claims

The United States Supreme Court observed, in *Virginia v. Hicks*, that "[w]hether Virginia's courts should have *entertained* [an] overbreadth challenge is entirely a matter of state law." 539 U.S. 113, 120, 123 S.Ct. 2191, 156 L.Ed.2d 148 (2003) (emphasis in original). At the same time, the Court also observed a distinction between: (1) questions about whether the state courts "should have entertained" the challenge brought by Hicks, and (2) questions about "whether the claimed overbreadth [of the] policy [at issue] [was] sufficiently 'substantial' to produce facial invalidity." *Id.* Speaking of the latter (whether the claimed overbreadth was sufficiently substantial), the Court explained, "These questions involve not standing, but 'the determination of [a] First Amendment

challenge *on the merits.'*" *Id.* (quoting from *Secretary of State of Md. v. Joseph H. Munson Co.,* 467 U.S. 947, 958–959, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984)) (emphasis added). Thus, the Supreme Court acknowledged a distinction between the issue of standing in an overbreadth challenge and the merits of a First Amendment overbreadth issue, which requires a determination about whether the overbreadth of a statute is sufficiently substantial to justify declaring the statute facially unconstitutional.

The Supreme Court of Utah appears to agree with the proposition that standing, as opposed to the merits of an overbreadth claim, is a state law matter. In *Provo City Corporation v. Willden,* that Court observed, "the federal rules on standing ... are not binding on state courts, and the article III constitutional restrictions and federalistic prudential considerations that have guided the evolution of federal court standing law are not necessarily relevant to the development of the standing rules that apply in Utah's state courts." 768 P.2d 455, 456 (Utah 1989). The authors of Corpus Juris Secundum also seem to agree. Relying on *Virginia v. Hicks,* that authority has explained, "[s]tate courts are not bound by federal rules of justiciability, even when they address issues of federal law." 21 Corpus Juris Secundum *Courts* § 217, at p. 215 (2006).[3]

The majority seems to believe that the relaxed standing requirement applied by the federal courts in First Amendment overbreadth cases is a part of the substantive guarantee of the First Amendment, which the states are not free to avoid. Majority Opinion at 865–68.[4] I disagree. Limiting consideration of First Amendment overbreadth claims to those litigants who can demonstrate that their own constitutional rights have been violated would not mean that this Court would ignore the application of the substantive rule enforced through the First Amendment overbreadth doctrine. The substantive aspect of that doctrine requires invalidation of a law when it is shown that the overbreadth of the law is substantial in relation to its otherwise legitimate sweep. *See Hicks,* 539 U.S. at 120, 123 S.Ct. 2191 (explaining, "whether the claimed overbreadth [of a] policy [at issue] is sufficiently 'substantial' to produce facial invalidity," is the question that guides "the determination of [a] First Amendment challenge on the merits."). That substantive "merits" element of a First Amendment overbreadth challenge establishes a diminished burden from the burden that is applicable in ordinary constitutionality challenges, which commands that a statute will not be declared unconstitutional unless it is shown that it is unconstitutional in *all* of its applications. *See Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (explaining, "the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice," and "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.").

**3.** *See also* Adam M. Samaha, *Litigant Sensitivity in First Amendment Law,* 98 Nw. U.L.Rev. 1291, 1292 (Summer 2004) ("State and federal courts must abide by the same First Amendment law, but they need not use the same rules for standing. Different judiciaries might now provide overbreadth challenges to different categories of litigants.").

**4.** The majority argues: "Judge Yeary's dissent suggests that, as a matter of state law, we might be free to refuse to entertain overbreadth claims." Majority Opinion at 865. But the majority is mistaken. I do not believe we are free to refuse to entertain overbreadth claims generally. I do believe we ought to refuse to address them when they are presented by individuals who have suffered no constitutional deprivation.

*Compare Washington State Grange v. Washington State Republican Party,* 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008) (explaining that, in most cases in which a defendant seeks a declaration that a statute is facially unconstitutional, the Supreme Court requires a demonstration that the statute operates unconstitutionally in *all* of its applications), *with United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (explaining that a "challenger must establish that no set of circumstances exists under which the Act would be valid").

The majority correctly observes that the Virginia Supreme Court has addressed and rejected my conclusion that *Virginia v. Hicks* stands for the proposition that who may bring a facial challenge alleging overbreadth is a matter of state law. Majority Opinion at 867–68; *see also Jaynes v. Commonwealth,* 276 Va. 443, 666 S.E.2d 303, 308 (2008). In *Jaynes,* the Virginia Supreme Court concluded, "the opinion of the United States Supreme Court in [*Virginia v. Hicks*] addressed the issue of First Amendment standing only in the context by which that issue was placed before the Court: whether a state's *expansion* of First Amendment standing was subject to review by federal courts." *Jaynes,* 666 S.E.2d at 310. Thus, that court concluded, "the seemingly broad language about standing in the [*Virginia v. Hicks*] opinion cannot have the meaning now espoused by the Commonwealth." *Id.*

Ah, but can it? I believe that it can. I believe it does, and I believe the Supreme Court of Virginia probably reached the wrong conclusion because it made the same mistake this Court makes in failing to perceive a difference between the two

aspects of the overbreadth doctrine applied by the United States Supreme Court; both courts (this Court and the Virginia Supreme Court) fail to distinguish between the standing aspect of the Supreme Court's overbreadth doctrine and the aspect of its doctrine that addresses the merits of the constitutionality question: whether a statute's overbreadth is sufficiently substantial to find that it violates the First Amendment.

The majority points to some United States Supreme Court cases that recite, in various ways, a rule that I do not contest. Those cases stand merely for the indisputable proposition that the overbreadth doctrine itself is a function of substantive First Amendment law.[5] Unlike the majority, however, I recognize a difference between the "standing" element employed by the United States Supreme Court, to decide which litigants are permitted to bring a First Amendment overbreadth claim in federal court, and the substantive element of such a claim that requires measuring the substantiality of the statute's overbreadth to determine whether the statute is facially unconstitutional. It is the measurement of the statute's overbreadth that addresses the merits-based element of an overbreadth claim.

The majority also sets up a false comparison between claims brought by litigants asserting First Amendment overbreadth and claims brought by litigants asserting Fourth Amendment expectation-of-privacy issues. The majority observes that the latter issues (involving the Fourth Amendment) can also be characterized as involving "standing," but are more accurately viewed as part of substantive

---

**5.** The majority cites and relies on cases that support this general proposition, such as: *Sabri v. United States,* 541 U.S. 600, 610, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004), *Secretary of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 958–959, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984), and *New York v. Ferber,* 458 U.S. 747, 767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Majority Opinion at 865–66 & n.27.

Fourth Amendment law. To support that proposition, the majority quotes from *Rakas v. Illinois*, 439 U.S. 128, 139–140, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), in which the United States Supreme Court explained that "Fourth Amendment rights are personal in nature" and that the "definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing." But the issue of standing in First Amendment overbreadth cases is distinct from the conclusion that Fourth Amendment rights themselves are only personal rights.

The majority observes that "[n]o one would claim ... that a state court can decline to entertain the Fourth Amendment claim of an overnight guest on the ground that overnight guests simply do not have standing in state court under state law." Majority Opinion at 868. I agree. But that is because standing in that sense, under the Fourth Amendment, addresses not whether the claimant has a sufficient *personal interest* to bring the claim at all, but rather, whether the claimant has a sufficient *privacy interest* in the place searched to invoke Fourth Amendment protection.

It is also important to recognize that the Supreme Court has not invoked prudential considerations to expand the concept of Fourth Amendment standing as it has in First Amendment overbreadth cases. If it ever did, I might disagree with the majority about Fourth Amendment standing. I believe we might indeed then—properly— question our right to entertain a Fourth Amendment claim brought by one claimant based only on the invasion of another person's rights, even if the United States Supreme Court sanctioned it.

*Rakas* is also inapposite to the issue I have addressed. In *Rakas*, the Supreme Court was faced with a request to *expand* its traditional rules of standing in Fourth Amendment cases to allow criminal defendants to assert the Fourth Amendment rights of others when seeking to exclude evidence from their trials. 439 U.S. at 129–130, 99 S.Ct. 421. The Supreme Court declined that request. *Id.* at 150, 99 S.Ct. 421. Here, in contrast, the Supreme Court has already expanded its traditional rules of standing. I question only whether the sources of law that animate or restrain our authority permit us to follow their lead. The Court in *Rakas* described, "misgivings as to the benefit of enlarging the class of persons who may invoke the [exclusionary rule]" as a prudential consideration. *Rakas*, 439 U.S. at 138, 99 S.Ct. 421. To the degree that expansion of traditional standing rules involves merely "prudential" considerations, even when the expansion is sanctioned by the United States Supreme Court, the standing rules at issue are no longer rooted in the substantive guarantees of the First Amendment.

I believe that the question of whether the Texas Court of Criminal Appeals must entertain a First Amendment overbreadth claim by a person who cannot demonstrate first that his own constitutional rights have been violated is a matter of state law. I do not believe that the relaxed standing requirement employed by the United States Supreme Court for overbreadth claims is a substantive guarantee of the First Amendment. The Supreme Court of the United States may no more compel this Court to hear such a claim by such a person than it may compel this Court to entertain discretionary review in civil cases. Prior to this time, I would have thought that the latter issue (that Supreme Court could never compel us to hear civil cases because our state constitution forbids it) to be beyond dispute. *Compare* TEX. CONST. ART. V, § 3 (jurisdiction of the Texas Supreme Court) *with* TEX. CONST. ART. V, § 5(a) (jurisdiction of the Texas Court of Criminal Appeals).

## B. Texas law limits this Court's authority to address overbreadth claims

Having concluded that the standing element of an overbreadth claim is a matter of state law, I next address whether there are reasons why this Court should refuse to adopt the Supreme Court's relaxed standing requirements for overbreadth cases. I conclude we should not relax the standing requirements in Texas.

The Supreme Court of the United States derives its authority from Article III of the United States Constitution, which limits its jurisdiction to "cases" and "controversies."[6] That Court explains that the doctrine of "standing" is a landmark that serves to identify which cases will satisfy the Constitution's case and controversy requirement. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–562, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). But "standing," the Court has explained, has two strands: (1) Article III standing and (2) prudential standing. *See Elk Grove Unified Sch. Dist. v. Newdow,* 542 U.S. 1, 11, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004). Both are founded on concerns "about the proper—and properly limited—role of the courts in a democratic society." *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

To establish Article III standing, a claimant in federal court must show an "injury-in-fact" which "helps to ensure that the plaintiff has a personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus,* —— U.S. ——, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (internal quotation marks omitted). However, the Supreme Court has also "adverted to a prudential branch of standing, a doctrine not derived from Article III and not exhaustively defined but encompassing ... at least three broad principles: the

general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.,* —— U.S. ——, 134 S.Ct. 1377, 1386, 188 L.Ed.2d 392 (2014) (internal quotation marks omitted). These "broad principles," which animate the federal court's "prudential branch of standing," appear to me to be related more to the doctrine of separation of powers than to the Article III constitutional limitation of the federal courts' authority to the determination of cases and controversies. *Cf. id.* (explaining, "From Article III's limitation of the judicial power to resolving Cases and Controversies, and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the irreducible constitutional minimum of standing.") (internal quotation marks omitted).

The United States Constitution does not expressly require that the powers of the three branches of the federal government be separated. It is the United States Supreme Court that has judicially enforced the federal doctrine of the separation of powers. *See Miller v. French,* 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (explaining, "[t]he Constitution enumerates and separates the powers of the three branches of Government in Articles I, II, and III, and it is this very structure of the Constitution that exemplifies the concept of separation of powers.") (internal quotation marks omitted). The Texas Constitution, in clear contrast, mandates in plain language—appearing in the Constitution itself—that the "powers of the Government ... shall be divided."[7] The fact

---

6. U.S. CONST. ART. III § 2 (extending "judicial power" to "cases" and "controversies").

7. TEX. CONST. ART. II, § 1 (providing the following: "The powers of the Government of the

that separation of powers in Texas is not just a judicially observed phenomenon, but a distinct, overt, and clearly stated constitutional mandate indicates to me that our courts might have less discretion in defining the parameters of that doctrine for our State than does the United States Supreme Court when it comes to its federal judicially made separation of powers doctrine.

In fact, the author of today's majority opinion once wrote, "this Court has enforced the doctrine of separation of powers more aggressively than the United States Supreme Court has." *State v. Rhine*, 297 S.W.3d 301, 317 (Tex. Crim. App. 2009) (Keller, P.J., concurring, in which Meyers, Hervey, and Holcomb, JJ., joined). Perhaps that is because our Texas constitutional mandate that the powers of government remain separated is less subject to our own independent interpretation than is the federal—court made—doctrine of separation of powers. We should consider more seriously, then, whether the Texas Constitution's prohibition on actions by the Judiciary that invade the province of the Legislature might impede our authority to execute the United States Supreme Court's overbreadth doctrine in the exact same manner as it is executed by that Court. And, consequently, I believe we should consider whether we may permit Appellee in this case to claim—in state court—that the statute under which he was convicted is unconstitutional in the absence of a showing that his own constitutional rights have been violated.

Up to this point in time, this Court has simply *assumed* that it has the same authority as the United States Supreme Court to disregard traditional notions of standing (or to alter them) to address facial-overbreadth constitutional challenges in the area of the First Amendment, regardless of a showing by the complaining party that his own constitutional rights have been violated. But we might not have the authority to do that, and we ought not simply to presume that we do without at least considering the matter with some skepticism. It is simply not enough to conclude that, because United States Supreme Court has that power, we must have it as well. It would also be a mistake to conclude that the United States Supreme Court has the power to confer or even mandate jurisdiction or power to act upon this Court where the Texas Constitution and the Texas Legislature have not done so first. The Court of Criminal Appeals is not merely a subsidiary of the United States Supreme Court, or just a lesser federal court, even when it comes to questions of federal constitutional law.

For a court to judge a law to be substantially overbroad in violation of the First Amendment, prohibiting its future enforcement certainly frees the public from concern that it might be enforced against them should they choose to communicate in a manner appearing to conflict with the terms of the law. It is also beyond dispute that the First Amendment needs "breathing space," and a statute that is unconstitutionally overbroad in violation of the First Amendment may have the effect of chilling some protected expression until it is declared unconstitutional. But when a court judges a statute's potential unconstitutional breadth without the benefit of a case in which its unconstitutional breadth

State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.")

has actually become known by application, the court risks entering into the realm of speculation and conjecture; its speculations and conjectures about the manners in which the law might be enforced may fail to accord appropriate latitude to the other two branches of government charged with upholding the constitution. To do so may also improperly invade the provinces that are proper *only* to the other branches of government.[8]

The majority's decision in this case, to me, bears a striking resemblance to legislative action. Here, an individual who was not unconstitutionally affected by the destruction of a flag law at issue has, in effect, asked this Court to repeal the statute under which he was properly and constitutionally charged and convicted, not because his own constitutional rights were violated, but because the statute might be unconstitutionally applied against others, in the future, who are not before the Court

today. This Court has obliged his request.[9] In doing so, we have arguably engaged in a function that should be reserved to the legislative branch of our State's government. Certainly, we would not have obliged his request, and neither would the United States Supreme Court, if he had challenged the statute under any theory other than that it violated the First Amendment.

Consistent with the requirement that a claimant demonstrate standing before being allowed to advance a claim, the Supreme Court ordinarily requires adherence to the rule that, "a person to whom a statute may constitutionally be applied will not be heard to challenge [the] statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. at 610, 93 S.Ct. 2908. That Court has apparently relied on "prudential" considerations to re-

---

**8.** To be sure, there have been times in history when the courts have been more quick than other branches of government to address unconstitutional laws that were popular, such as when the courts addressed the Jim Crow laws. But in a rush to declare statutes facially unconstitutional to protect the public from what *we judges* consider to be overbroad laws, we might also on occasion forget that we live in a somewhat cloistered world. We basically talk to ourselves, and our staff, and perhaps we read a book from time to time. The other two branches of government have far greater input on matters that directly affect the public than we do. The executive and legislative branches of government naturally have opportunities to access and interact both with those officials who apply our laws and with the citizens who are most directly affected by them. We in the judiciary have nowhere near the same level of contact with the thoughts and opinions of real people. This cloistering that affects the judiciary unlike the other branches of government puts us at a disadvantage when measuring the true breadth of any law passed by the Legislature and approved by the Governor. It also raises the specter that the court might, being called upon to speculate about the possible

applications of a law, declare a statute unconstitutionally overbroad—a statute that would never have been enforced in a manner inconsistent with the First Amendment and would never have been understood by ordinary citizens to reach constitutionally protected expression—by imagining a perfectly fine law into a dangerous monster that threatens the very fabric of our nation. We should guard ourselves against that.

**9.** Allowing a litigant to bring a claim in our state courts that a statute is unconstitutional when he cannot show that it was unconstitutionally applied to him in his own case also invites us to assume the power to issue advisory opinions. But we are without power to do that. *See Pfeiffer v. State*, 363 S.W.3d 594, 600 (Tex. Crim. App. 2012) (observing that this Court is "without authority" to render advisory opinions). In fact, as this Court has held before, "[i]t is well-established that this Court is without constitutional or statutory authority to ... render advisory opinions, except" for when we are answering questions certified to us by a federal court. *Ex parte Ruiz*, 750 S.W.2d 217, 218 (Tex. Crim. App. 1988).

lax this ordinary rule of standing in cases alleging First Amendment overbreadth. However, I do not believe that we in Texas are free to interpret our constitutionally mandated separation of powers provision as liberally as the United States Supreme Court has interpreted its own court-made federal doctrine of separation of powers, pursuant to merely "prudential" considerations. Consequently, in this case, because Appellee cannot show that his own First Amendment rights have been violated, I would conclude Appellee's claim—that the Texas destruction-of-a-flag statute is facially unconstitutional—is barred. *Cf. Hollingsworth v. Perry*, —— U.S. ——, 133 S.Ct. 2652, 2659, 186 L.Ed.2d 768 (2013) (explaining that when a claimant in federal court cannot establish standing to bring a claim, the federal courts "have no authority to decide [a] case").

## THE COURT MISAPPLIES OVERBREADTH

Even assuming that we are authorized to address the facial constitutionality of the destruction of a flag statute in spite of Appellee's failure to demonstrate that the statute is unconstitutional as applied to his own conduct, I still have serious concerns that Appellee has failed to meet the bare requirements of the overbreadth doctrine, even as that doctrine has been applied by the United States Supreme Court. In *Broadrick*, the United States Supreme Court explained, "where conduct and not merely speech is involved, . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, at 615, 93 S.Ct. 2908. There is no question that the destruction of a flag statute addresses conduct. The majority even acknowledges that "the conduct of intentionally or knowingly damaging a United States flag is not inherently expressive." Majority Opinion at 873 & n.74; *see also Johnson*, 491 U.S. at 403 n.3, 109 S.Ct. 2533. As a matter of fact, the only way that the destruction of a flag statute can ever be applied to expressive conduct is if an actor violates the statute with the additional self-initiated intent (not described in the statute) to express some message. But the statute itself makes no reference to this additional self-initiated intent.

In isolation, then, the destruction of a flag statute is a pure conduct regulation. In that regard, it is really no different than our laws prohibiting disorderly conduct. *See* Tex. Pen. Code § 42.01 (providing that a person commits an offense if, among other things, the person intentionally or knowingly "(3) creates, by chemical means, a noxious and unreasonable odor in a public place;" or "(5) makes an unreasonable noise in a public place . . . or in or near a private residence that he has no right to occupy"). Like the destruction of a flag statute, the disorderly conduct statute prohibits pure conduct. It is only when a discrete individual violates these laws with the additional self-initiated intent to communicate a message that any potential violation of the First Amendment—even arguably—might occur.[10]

In many respects, the law at issue here is also comparable to the law at issue in *Virginia v. Hicks*. The Supreme Court explained that Hicks "was not arrested for leafleting or demonstrating without permission," but rather, "[h]e violated [a] written rule that persons who receive a

---

**10.** The Texas Penal Code contains a defense to prosecution for cases in which a defendant engages in conduct that would violate Section 42.01(a)(5) whenever that conduct "consists of speech or other communication," unless the defendant has disobeyed a reasonable order "to move, disperse, or otherwise remedy the violation prior to his arrest[.]" Tex. Penal Code § 42.04(a), (c).

barment notice must not return to the [Richmond Redevelopment and Housing Authority] property." *Hicks*, 539 U.S. at 121, 123 S.Ct. 2191. The Court explained, "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law—particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.' [citation omitted]. For there are substantial social costs *created* by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, *or especially to constitutionally unprotected conduct*." *Id.* at 119, 123 S.Ct. 2191 (first emphasis in the original; second emphasis added).

It seems to me that a determination that a statute is unconstitutional on its face should not be entirely dependent on the motivations of individual violators who attack it. At that point, we are no longer truly addressing the facial constitutionality of the law itself, but the mere constitutionality of the application of the law against the individuals who violate it with an additional self-initiated intent to communicate a message.

The outer boundaries and reach of the overbreadth doctrine have not yet been defined by the United States Supreme Court. We know that before a court may strike down a law "where conduct and not merely speech is involved, ... the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, at 615, 93 S.Ct. 2908. But what constitutes "substantial ... in relation to ... [its] plainly legitimate sweep"? An easy argument can be made that it means the statute prohibits a lot of protected speech! But the majority observes in this case only that it is "clear that the Texas flag destruction statute violates the

First Amendment when applied to *some circumstances.*" Majority Opinion at 873 (emphasis added). The majority also concedes that there are at least two types of situations that might involve permissible applications of the law. Majority Opinion at 875. The majority then concludes that "[m]ost conduct that falls within the provisions of the statute and that would come to the attention of the authorities would constitute protected expression." Majority Opinion at 876. But that conclusion can only be drawn with reference to choices made outside of the parameters of the language of the statute itself—and with a reference to choices made by actors who use the violation of this pure conduct-regulating statute to accomplish their own purposes.

What is certain is that the overbreadth doctrine, as it is currently enforced by the Supreme Court, requires an examination of the *statute* itself, and not merely the potential or hypothetical First Amendment uses that violators of the statute might intend for it by their acts taken in violation of its provisions. *See United States v. Stevens*, 559 U.S. 460, 485, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010) (Alito, J., dissenting) (citing *Hicks*, 539 U.S. at 122, 123 S.Ct. 2191) ("[W]e have repeatedly emphasized that an overbreadth claimant bears the burden of demonstrating from the text of [the law] and from actual fact, that substantial overbreadth exists.") (internal quotation marks omitted). The Supreme Court explains the doctrine this way: "the overbreadth of *a statute* must not only be real, but substantial[.]" *Broadrick*, at 615, 93 S.Ct. 2908 (emphasis added). Even the Supreme Court acknowledges that "there comes a point at which the chilling effect of an overbroad law, significant though it may be, cannot justify prohibiting all enforcement of that law." *Hicks*, 539 U.S. at 119, 123 S.Ct. 2191. That point might be where the language of the statute on its

face fails to implicate any kind of communicative efforts, and where the only way the statute might prohibit First Amendment protected messages is if the conduct is intended for that purpose solely by the actor. *See Broadrick*, 413 U.S. at 615, 93 S.Ct. 2908 (explaining, "facial overbreadth adjudication ... attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct").

This Court has not been asked to consider here, and it does not address, whether the flag destruction statute might be unconstitutionally vague or whether it might operate unconstitutionally for any other reason, such as in violation of a right to liberty generally. The Court's limitation of its opinion to the issue actually presented is, I believe, appropriate. Such questions should be reserved for cases in which those issues are clearly before us.

### CONCLUSION

Appellee in this case has failed to demonstrate that his own conduct—that violated the provisions of the destruction of a flag statute—was protected by the First Amendment. In cases where the destruction of a flag statute operates unconstitutionally in violation of an individual's First Amendment rights *as applied*, I would

agree that such an individual would deserve relief.[11] Under the circumstances presented here, I cannot agree.

11. It seems to me that the chances that law enforcement officials would attempt to apply this statute against an individual in violation of the First Amendment as construed by the United States Supreme Court have been substantially diminished as a result of that Court's opinions in *Texas v. Johnson* and *United States v. Eichman*. The constitutional right to burn and/or otherwise destroy the flag of the United States is now well and broadly known to the people of this country and beyond. I would be surprised if even people commonly interviewed by Jesse Watters (host of Watters' World on the television show The O'Reilly Factor) would not know that the Supreme Court has protected their right to express dissatisfaction by destroying the flag. In fact—perhaps because of those

opinions—flag burning and flag destruction appear to have become somewhat of a rite of passage and even a badge of honor for domestic protesters of federal legislative and executive actions. It is incredibly common today to hear stories of people dishonoring this revered symbol of our nation. What has become much less common and almost nonexistent since the United States Supreme Court opinions in *Johnson* and *Eichman* is stories of people being arrested and prosecuted for destroying a flag in the exercise of their First Amendment right of free speech. Consequently, the urgency of striking down this law, even if its language does allow for the potential to reach *some* constitutionally protected speech, is diminished as well.